15
ESTELA O. PINO, State Bar No. 112975
DAVID A. HAYNES, State Bar No. 264688
**PINO & ASSOCIATES**
800 Howe Ave. Suite 420
Sacramento, CA 95825
Telephone: (916) 641-2288
Facsimile: (916) 641-1888

Attorneys for Leo J. Speckert, Trustee of California Capital Loans, Inc., Profit Sharing Plan; and California Capital Loans, Inc., Creditors

THE UNITED STATES BANKRUPTCY COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

|  |  |
|---|---|
| In re: | Case No. 13-22530-B-11 |
| BUTTE CREEK PARK, LLC, | DCN: P&A-2 |
| Debtor. | **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |
|  | Date:        May 14, 2013 |
|  | Time:        9:31 a.m. |
|  | Dept:        B |
|  | Courtroom: 32 |
|  | Location:    Robert T. Matsui United States Courthouse, 501 I Street, Sixth Floor Sacramento, CA 95814 |
|  | Judge: Hon. Thomas C. Holman |

Leo J. Speckert, Trustee of California Capital Loans, Inc., Profit Sharing Plan, (hereinafter referred to as "Mr. Speckert") and California Capital Loans, Inc. (hereinafter referred to as "CCL") creditors and parties in interest in the above-referenced Chapter 11 case, by and through their attorneys of record, do hereby submit as follows in support of the following Motion for Relief from the Automatic Stay:

## RELIEF SOUGHT

Mr. Speckert and CCL seek an order from this Court granting Relief from the Automatic Stay as to certain unimproved real property described as 214.43 acres at the southwest corner of Southgate Avenue and Highway 99 in Chico, California, APNs 040-020-075-000 and 040-020-157-000 (hereinafter referred to as the "Unimproved Property") so that Mr. Speckert and CCL can proceed with all contractual and statutory remedies under California state law with respect to a Deed of Trust encumbering the Unimproved Property, including, but not limited to conducting a Trustee's Sale, which was scheduled to take place on February 27, 2013, the very day the bankruptcy case was filed. As a result, the Trustee's Sale was postponed.

## BASIS OF JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. section 362(d).

2.     This Motion, which seeks relief from the automatic stay, is a core matter pursuant to 28 U.S.C. § 157(b)(2)(G).

3.     Venue is proper before this Court pursuant to 28 U.S.C. § 1409(a).

## STATEMENT OF FACTS

Mr. Speckert and CCL do hereby respectfully submit as follows in support of the instant Motion:

1.     Mr. Speckert and CCL are payees on a Promissory Note dated June 11, 2009, in the total principal amount of $1,800,000.00 (hereinafter referred to as "Promissory Note"). Mr. Speckert is a payee as to $1,000,000.00 and CCL is a payee as to the remaining $800,000.000 in connection with the Promissory Note. Butte Creek Park, LLC (hereinafter

referred to as the "Debtor"), is the payor on the Promissory Note. Mr. Speckert and CCL are sometimes hereinafter collectively referred to as the "Payees." A true and correct copy of the Promissory Note is attached as **Exhibit 1** to the Separate List of Exhibits filed concurrently herewith.

2.     Mr. Speckert, as Trustee of California Capital Loans, Inc., Profit Sharing Plan and President of California Capital Loans, Inc. has possession of the original Promissory Note.

3.     The Promissory Note is secured by a Deed of Trust with Assignment of Rents (hereinafter referred to as the "Deed of Trust") naming the Debtor as trustor and Mr. Speckert and CCL, as beneficiaries.

4.     The Deed of Trust was recorded on July 28, 2009 in the official records of Butte County as instrument number 2000-0027173. A true and correct copy of the Deed of Trust is attached as **Exhibit 2** to the Separate List of Exhibits filed concurrently herewith.

5.     The Deed of Trust encumbers the Unimproved Property.

6.     The Payees have not received a payment on the Promissory Note since June 2012.

7.     As of April 16, 2013, a total of $2,034,090.37 is owed to the Payees as follows:

| Principal | $1,795,628.06 |
| Unpaid Interest | $207,308.95 |
| Late Fees | $18,854.10 |
| Foreclosure Fees and Costs | $12,299.26 |

Interest accrues at the rate of $688.73 per diem.

8.     The Promissory Note has an attorney's fees provision. Mr. Speckert and CCL have now incurred attorneys' fees and costs in connection with this Chapter 11 case and continue to incur said fees and costs.

9.     A Notice of Default in connection with the Unimproved Property was recorded on October 29, 2012. The Unimproved Property was

subsequently scheduled for Trustee's Sale, which was scheduled to take place on February 27, 2013, the very day the bankruptcy case was filed. As a result, the Trustee's Sale was postponed.

## **BANKRUPTCY CASE**

1.     On February 27, 2013, the Debtor filed a "skeletal" Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code.

2.     On March 13, 2013, the Debtor filed its Schedules of Assets and Liabilities, Statement of Financial Affairs, and other documents. It is respectfully requested that the Court take judicial notice of the Schedules of Assets and Liabilities, Statement of Financial Affairs, and other documents filed on March 13, 2013, docket entry number 15.

3.     Within the Schedule A, the Debtor listed the Unimproved Property as having a value of $16,500,000.00.

4.     Within the Schedule D, the Debtor lists a total of $11,901,670.85 in debt which is secured by the Unimproved Property. Specifically, the Debtor lists the following debts:

| | |
|---|---|
| Butte County Tax Collector | $38,670.85 |
| Deed of Trust (Mr. Speckert and CCL) | $1,800,000.00[1] |
| Coast Capital Income Fund I, LLC Deed of Trust | $4,500,000.00 |
| Janet K. Peterson Deed of Trust | $5,430,000.00 |
| Linda E. Meyers Deed of Trust | $133,000.00 |

A true and correct copy of the Schedule D is attached as **Exhibit 3** to the Separate List of Exhibits filed concurrently herewith.

---

[1] The full amount due and owing to Payees as of April 16, 2013 is $2,034,090.37.

5.      As set forth in response to Question 1 of the Statement of Financial Affairs, the Debtor has disclosed that it has received "$0.00" in income for 2011, 2012, and 2013 year to date.

6.      Pursuant to Local Rule 2015-1, the Debtor is required to file a Monthly Operating Report by the 14th day of the month following the period reported. It is now April 16, 2013, and the Debtor has not filed a Monthly Operating Report for March 2013, which is now past due.

7.      At all times since the filing of the instant bankruptcy case, the Debtor has been represented by Sagaria Law, PC. The Debtor has not filed a motion to employ Mr. Sagaria or any other attorney as Debtor's counsel. A true and correct copy of the docket of the instant bankruptcy case, as of April 16, 2013 is attached as **Exhibit 4** to the Separate List of Exhibits filed concurrently herewith.

8.      The Disclosure of Compensation of Attorney for Debtor(s) indicates that the Debtor was the source of compensation to Sagaria Law.

9.      Question 9 of the Statement of Financial Affairs requires the disclosure of bankruptcy related payments within one year prior to the filing of the bankruptcy case. If the source of the payment is not the Debtor, the payor must be disclosed. The Debtor did not disclose a payor in response to Question 9, so it is implied that the Debtor was the payor.

10.      All of the statements and information provided by the Debtor within its Schedules and Statement of Financial Affairs, which were executed under penalty of perjury by Mr. Phillips, are admissions of the Debtor and are admissible as non-hearsay evidence pursuant to Rule 801(d)(2) as "[a]n Opposing Party's Statement." The Federal Rules of Evidence are made applicable to this contested matter by Rule 9017 of the Federal Rules of Bankruptcy Procedure.

## OTHER ADMISSIONS OF THE DEBTOR ELICITED DURING THE MEETING OF CREDITORS

1.      On April 1, 2013 the 341 Meeting of Creditors (hereinafter referred to as the "341 Meeting")  was conducted in connection with the instant bankruptcy case by the Office of the United States Trustee. A true and correct copy of the relevant portions of the Transcript from Recorded Proceedings 341 Meeting of Creditors are attached as **Exhibit 5** to the Separate List of Exhibits filed concurrently herewith.

2.      During the 341 Meeting, Gary Phillips testified on behalf of the Debtor. Mr. Phillips is the "managing partner" of Southgate Park, LLC. Southgate Park, LLC (hereinafter referred to as "Southgate") is the "managing partner" of the Debtor. (341 Meeting Transcript, pages 11-12).

3.      All of the testimony provided by the Debtor at the 341 Meeting of Creditors, made under penalty of perjury by and through Mr. Phillips, are admissions of the Debtor and are admissible as non-hearsay evidence pursuant to Rule 801(d)(2) as "[a]n Opposing Party's Statement." The Federal Rules of Evidence are made applicable to this contested matter by Rule 9017 of the Federal Rules of Bankruptcy Procedure.


## Admissions Re: Payment to Debtor's Attorney

4.      Southgate was the source of the $20,000 payment to the Debtor's attorney, Sagaria Law, and not the Debtor:

> Mr. Blumberg: Did the debtor – was the debtor the source of the $20,000 or —
>
> Mr. Phillips: No –
>
> Mr. Blumberg: – some other entity the source?
>
> Mr. Phillips: Another entity was the source, that one of the – one of the partners in Butte Creek –

(341 Meeting Transcript, page 11, lines 8-15)

Mr. Blumberg: Okay. And Southgate, the
Southgate entity was the source of the $20,000 –

Mr. Phillips: Right.
(341 Meeting Transcript, page 13, lines 6-8)

This directly contradicts the Disclosure of Compensation of Attorney for Debtor(s).

## Admissions Re: Unimproved Property and Value Thereof

     5.     Mr. Phillips testified that the Debtor does not currently have the "entitlements" to develop the property:

Mr. Blumberg: Okay Does the debtor
have the entitlements it needs to develop the
property?

Mr. Phillips: We are in that process of
gaining those entitlements...
(341 Meeting Transcript, page 14, lines 17-21)

Ms. Pino: And there's no entitlements
For the building of infrastructures on the
property?

Mr. Phillips: Correct.
(341 Meeting Transcript, page 45, lines 23-25; page 46, line 1)

     6.     Mr. Phillips admitted during the 341 Meeting that the value of the Unimproved Property that is set forth on the Schedule A, is the value of the property with entitlements:

Ms. Pino: And the value that is on the
Schedule A is the value of the property with the
entitlements on it?

Mr. Phillips: Correct.

Ms. Pino: And the entitlements are not
on the property right now, correct?

Mr. Phillips: Correct.
(341 Meeting Transcript, page 34, lines 19-25).

7.    Mr. Phillips testified that the Unimproved Property has been listed for sale "as-is" without entitlements, at a price of $8.4 million:

> Mr. Blumberg: And is the property listed for sale as-is?
>
> Mr. Phillips: It currently has been listing the property. I know they're supposed to fill out an application with you guys, but we started this listing before it went into foreclosure.
>
> (341 Meeting Transcript, page 18, lines 18-24).
>
> Mr. Blumberg: And the listing price right now is how much?
>
> Mr. Phillips: Right now the listing is for 8.5.
>
> Mr. Blumberg: 8.5? Is it 8.4 million?
>
> Mr. Phillips: Or **8.4 million**, I'm sorry.
> (Emphasis added. 341 Meeting Transcript, page 19, lines 4-9).

Mr. Phillips testified that the Debtor entered into a listing agreement with Voit Real Estate Services. (341 Meeting Transcript, page 43,  lines 5-7).

8.    Mr. Phillips testified that he estimates that it will cost approximately $500,000 to complete the entitlements: "[w]e're estimating it's about $500,000 to complete the entitlements." (341 Meeting Transcript, page 46, lines 21-22).

9.    Mr. Phillips testified that the last time the Debtor made a tax payment to Butte County was approximately two years ago.(341 Meeting Transcript, page 34, lines 8-11).

10.    Mr. Philips testified that the debts listed on the Debtor's Schedule D do not include the accrued but unpaid interest. (341 Meeting Transcript, pages 37-41). Mr. Blumberg from the Office of the U.S. Trustee advised the Debtor, by and through Mr. Phillips and Mr. Calhoun, as follows:

1
2
3
4

Mr. Blumberg: I have a couple of requested amendments
to the schedules and statements...
Schedule D would be important to add or
include the pre-petition interest amounts to the
claim amount. I don't see a reason not to include
those --

5

Mr. Phillips: Okay.

6
7
8

Mr. Blumberg: –at their pre-petition.
And, finally, in item 9 of the Statement
of Financial Affairs, I think the source of the
payment to Mr. Calhoun's office should be
disclosed. That would be the Southgate entity.

9
10

Ms. Pino: Yeah, I don't think the source
of the compensation was disclosed in the Rule 2016
statement.

11

Mr. Blumberg: Yeah, the 2016(b)
Statement as well should be amended.

12
13
14
15

(341 Meeting Transcript, page 52, lines 14-15; 23-25, page 53, lines 1-12). As of April 16, 2013, the Debtor has failed to file any amendments as directed by the U.S. Trustee. (See Exhibit 4).

16

**Admissions Re: Income of Debtor**

17
18
19
20

11.     Mr. Phillips testified that the Debtor had no gross revenue for 2013 year to date, 2012, 2011, 2010. In fact, Mr. Phillips testified that: "...the debtor's never had any income." (341 Meeting Transcript, page 47, lines 11-23).

21
22
23
24

12.     Mr. Phillips further testified that out of the loan funds received by the Debtor to develop the Unimproved Property, Mr. Phillips was paid $400,000 in management fees. (341 Meeting Transcript, page 54, lines 19-25; page 55, lines 1-11).

25
26

**ARGUMENT**

27
28

Mr. Speckert and CCL seek relief from the automatic stay pursuant to 362(d)(1) and (d)(2), of Title 11 of the United States Code.  Said statute reads as follows:

[o]n request of a party in interest and after notice and a hearing, the court **shall** grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest...

> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization... (Emphasis added).

It is respectfully submitted that relief from the automatic stay should be granted under section 362(d)(2) due to a lack of equity in the Unimproved Property, which is not necessary to an effective reorganization. Furthermore, it is respectfully submitted that relief from the automatic stay should be granted under section 362(d)(1), for cause, as this case was a "bad faith" filing.

A party seeking relief from the automatic stay under section 362(d) need establish only one of the "alternative grounds for relief." *First Conn. Small Bus. Inv. Co. v. Ruark*, 7 B.R. 46, 49 (D. Conn. 1980); *In re Leonard,* 151 B.R. 639, 643 (Bankr. N.D.N.Y. 1992).

**Burden of Proof**

In opposing a Motion for Relief from Stay, the Debtor bears the burden of proof on all issues other than equity in the property, including a lack of adequate protection of a party's interest. 11 U.S.C. section 362(g); *In re Gauvin*, 24 B.R. 578, 580 (B.A.P. 9th Cir. 1982).

**Mr. Speckert and CCL are Entitled to Relief from the Automatic Stay Under 11 U.S.C. Section 362(d)(2)**

Section 362(d)(2) provides that relief from the automatic stay shall be granted with respect to an act against real property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization..." For the property to be necessary for an effective reorganization there "must be 'a reasonable possibility of a successful

reorganization within a reasonable time.'" *In re Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-6 (1988) (Citations omitted).

Equity is a function of two factors, the value of the property and the amount of the encumbrances against the property.

Pursuant to the admissions of the Debtor elicited at the 341 Meeting of Creditors, it is clear that the Debtor has failed to make full and complete disclosures and that there is no equity in the Unimproved Property:

## Analysis of Encumbrances

| | |
|---|---|
| Butte County Tax Collector | $38,670.85[2] |
| Deed of Trust (Mr. Speckert and CCL) | $2,034,090.37[3] |
| Coast Capital Income Fund I, LLC Deed of Trust | $4,500,000.00 minimum[4] |
| Janet K. Peterson Deed of Trust | $5,430,000.00 minimum[5] |
| Linda E. Meyers Deed of Trust | $133,000.00 minimum[6] |
| **Total Secured Debt** | **$ 12,135,761.22** |

Mr. Speckert and CCL are owed $2,034,090.37, however, the Debtor lists only $1,800,000 on the Schedule D. Mr. Phillips testified under penalty of perjury, as set forth above, that none of the listed secured debts include

---

[2]   The amount listed by the Debtor is likely the minimum amount.

[3]   See Declaration of Leo J. Speckert, filed concurrently herewith. The Debtor listed the debt owed to Mr. Speckert and CCL as only $1,800,000.

[4]   This amount does not include unpaid interest due and owing which the Debtor did not disclose on the Schedule D, as admitted by Mr. Philips at the Meeting of Creditors.

[5]   This amount does not include unpaid interest due and owing which the Debtor did not disclose on the Schedule D, as admitted by Mr. Philips at the Meeting of Creditors.

[6]   This amount does not include unpaid interest due and owing which the Debtor did not disclose on the Schedule D, as admitted by Mr. Philips at the Meeting of Creditors.

unpaid interest. Thus, the Debtor has understated all of its secured debts in order to manufacture an appearance of equity.

The Debtor paints a picture, within its Schedules, that there is equity in the Unimproved Property. After Mr. Speckert and CCL, by and through their attorneys of record, tested the veracity of the of representations made by the Debtor during the 341 Meeting, it was discovered that the equity is illusory.

As set forth above, the "as-is" value of the Unimproved Property is not the amount set forth on the Schedule A, of $16,500,000. Mr. Phillips also testified that the amount set forth on the Schedule A is the value of the property "with entitlements," even though the property does not actually have the entitlements. Mr. Phillips testified that the Unimproved Property is listed for sale "as-is" without entitlements with Voit Real Estate Services. Mr. Phillips testified that the listing price is $8,400,000. The listing price established by the Debtor is a more realistic price for the Unimproved Property. Accordingly, subtracting the minimum total debt of $12,135,761.22 from a value of $8,400,000, there is net **negative** equity of $3,735,761.22:

```
  $8,400,000.00
- $12,135,761.22
_____
 ($3,735,761.22) Net Equity
```

Thus, there is no equity in the Unimproved Property.

Furthermore, there is no evidence that there is a reasonable possibility of a successful reorganization within a reasonable time. On the contrary, the evidence strongly suggests that there is no reasonable possibility of such a reorganization. As set forth in the Debtor's Statement of Financial Affairs and as confirmed by Mr. Phillips under penalty of perjury, the Debtor has never had any income.

Accordingly, the Debtor has no realistic or reasonable possibility of a successful reorganization, within a reasonable time, given the total lack of

income and the lack of equity in the Debtor's only asset. The Debtor has overstated the value of the Unimproved Real Property and understated the secured debts in order to create the illusion of equity. It is respectfully submitted that given the lack of equity in the Unimproved Property and the lack of a reasonable possibility of reorganization, Mr. Speckert and CCL are entitled to relief from the automatic stay under section 362(d)(2) as to the Unimproved Property.

**Mr. Speckert and CCL are Entitled to Relief from the Automatic Stay Due to the Bad Faith of the Debtor**

As held by the court in *In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (9th Cir. B.A.P. 1996) "[t]he existence of bad faith in commencing a bankruptcy case constitutes cause for granting relief from the stay pursuant to § 362(d). *In re Walter, 108 Bankr. 244, 247 (Bankr. C.D. Cal. 1989)*." (Italics found in original). It is respectfully submitted that the Debtor filed the instant bankruptcy case in bad faith. The filing of a bankruptcy case to delay a foreclosure without prospects of reorganization has been deemed to constitute bad faith. *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986).

In the instant case, it is respectfully submitted that the Debtor filed this Chapter 11 case in bad faith. First, it is evident that the Debtor misrepresented facts in the Schedules and unfairly manipulated the Court and creditors by utilizing a knowingly incorrect value for the Unimproved Property. The Debtor failed to disclose the full amounts of the Debts owed to the secured creditors by not including unpaid interest. The Debtor has failed to amend its Schedules as directed by the Office of the U.S. Trustee. The Debtor has failed to seek an order from the Court authorizing the employment of counsel. The Debtor has failed to file a Monthly Operating Report for March 2013. Furthermore the Debtor has never had any income whatsoever. The

only funds that the Debtor apparently received were from the various secured creditors, with which it apparently paid Mr. Phillips an exorbitant management fee of $400,000.

It is clear that the Debtor filed the instant bankruptcy case to stay a foreclosure by Mr. Speckert and CCL, despite the fact that the Unimproved Property is overencumbered and the Debtor has no income. The Debtor and its members were aware it had no prospect of reorganization when the instant case was filed. The Debtor and its members intentionally overvalued the Unimproved Property to make it appear as though the property had equity to leverage into a reorganization. However this is not the case, as admitted by Mr. Phillips during the 341 Meeting.

The Debtor has sought the extraordinary remedy of bankruptcy but has failed to comply with the concomitant obligations of the bankruptcy process.

It is respectfully submitted that due to the bad faith of the Debtor in commencing the instant bankruptcy case, relief from the Automatic Stay should be granted to Mr. Speckert and CCL as to the Unimproved Property.

///
///
///
///
///
///
///
///
///
///
///
///

1

2

## CONCLUSION

3   It is respectfully submitted that Mr. Speckert and CCL are entitled to

4   relief from the Automatic Stay due to a lack of equity and for cause, due to the

5   bad faith of the Debtor.

6   **WHEREFORE**, it is respectfully requested that the Court enter an order

7   as follows:

8   1)   Granting Mr. Speckert and CCL relief from the Automatic Stay as

9   to the Unimproved Properties so that Mr. Speckert and CCL can proceed with

10  all contractual and statutory remedies under California state law with respect

11  to Deeds of Trust encumbering the Unimproved Property, including, but not

12  limited to conducting a Trustee's Sale; and

13  2)   For such further relief as is fair, just, and equitable, whether or not

14  specifically requested herein.

15

16  Dated: April 16, 2013                        Respectfully submitted,

17

18                                               PINO & ASSOCIATES

19

20                                               By: _____

21                                               Estela O. Pino, Attorneys for
                                                 Leo J. Speckert, Trustee of California
22                                               Capital Loans, Inc., Profit Sharing Plan
                                                 and California Capital Loans, Inc.

23

24

25

26

27

28